UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PANHANDLE EASTERN PIPE LINE COMPANY, L.P., </br></br>Plaintiff, </br></br>v. </br></br>JAMES H. PFAHL, REBECCA D. PFAHL, PAUL R. LINDLEY, SHERRI L. LINDLEY, SHAWN TAYLOR, STACY TAYLOR, MICHAEL THULINE, MARK ECKHOFF, SALLY WATKINS, FRED WEAVER, RODNEY WEAVER, FLOYD D. MUDD, and MARJORIE L. MUDD, </br></br>Defendants. | Case No.   11-cv-1334 |

## O R D E R  &  O P I N I O N

Before the Court are Plaintiff's Motions for Summary Judgment as to Defendants Mark Eckhoff and Sally Watkins (Doc. 37), and Defendants Paul R. Lindley and Sherri L. Lindley (Doc. 38). In these Motions, Plaintiff seeks a judgment providing injunctive relief, allowing it to clear its easements on Defendants' properties. Mark Eckhoff and Sally Watkins responded to the Motion (Doc. 46) and Plaintiff replied (Doc. 48). The Lindleys also filed a Response to Plaintiff's Motion (Doc. 44) and Plaintiff replied (Doc. 47). For the reasons stated below, Plaintiff's Motions for Summary Judgment are denied. The Lindleys have requested oral arguments on the Motions for Summary Judgment. Because the Court finds that it can determine the issues based upon the record and written arguments before it, this request is denied.

## PROCEDURAL HISTORY

Plaintiff filed the present action on September 2, 2011. In the First Amended Complaint,[1] Plaintiff seeks to enjoin Defendants from interfering with Plaintiff's plans to access and clear portions of land pursuant to the easements across Defendants' properties. (Doc. 26). Defendants Shawn Taylor, Stacy Taylor, Fred Weaver, Rodney Weaver, Marjorie Mudd and Floyd D. Mudd have all previously been dismissed from this case. Plaintiff filed the instant Motions for Summary Judgment on February 1, 2013.

## FACTUAL BACKGROUND[2]

Plaintiff is a natural gas transportation company that owns and maintains a widespread natural gas pipeline system throughout the United States. The system includes a pipeline Plaintiff calls the Galesburg Lateral, which runs under Defendants' properties. (Doc. 37 at 3-4; Doc. 38 at 3-4).

Defendants are residents of Peoria County, Illinois. (Doc. 37 at 3; Doc. 38 at 3). Defendants Mark Eckhoff and Sally Watkins own real estate at 420 N. Carole Avenue, Hanna City, Illinois, and their title to that property was acquired subject to

---

[1] Here the Court will briefly address an error regarding jurisdiction. Plaintiff claims that this action is brought pursuant to federal law, and thus the Court has federal question jurisdiction under 28 U.S.C. § 1331. (Doc. 26 at 3-4). Yet Plaintiff has not brought a claim under a federal statute, and simply mentions federal statutes that are relevant to the subject of litigation. This does not create federal question jurisdiction. However, because the parties to this dispute are diverse, and the Court accepts that the amount in controversy exceeds $75,000, diversity jurisdiction in this Court is proper. *See* 28 U.S.C. § 1332.

[2] Unless otherwise indicated, these background facts reflect the Court's determination of the undisputed facts, and are drawn from the Amended Complaint, Plaintiff's Motions for Summary Judgment, Defendants' Responses, and Plaintiff's Replies. All genuine disputes and reasonable inferences are taken in Defendants' favor, as noted below.

the pipeline easement owned by Plaintiff. (Doc. 37 at 3). The easement, entitled "Right-of-Way Grant"[3] was executed on May 26, 1941, and was properly recorded. (Doc. 37-1 at 8). It grants to Illinois Natural Gas Company, and thereby to Plaintiff as successor to the original easement holder, "the right to lay, maintain, alter, repair, replace, operate and remove at any time hereafter a pipe line for the transportation of natural gas . . . with the right of ingress and egress to and from the same on, over and through" the described property, which includes the Eckhoff/Watkins property. (Doc. 37-1 at 8; *see* Doc. 37-1 at 19). There is no specific easement width or exact location of the pipeline defined in the grant.

The Lindley property is located at 625 N. Main Street, Hanna City, Illinois, and was also acquired subject to the pipeline easement owned by Plaintiff. The original grant of right of way as to the Lindley property is dated July 19, 1941, and contains the same language as the grant related to the Eckhoff/Watkins property, save for the description of the easement location. (Doc. 38-1 at 8). Again, a specific width of the easement or exact location of the pipeline is not defined in the grant.

On February 28, 2011, Plaintiff notified Defendants of its plans to begin clearing the easements across Defendants' properties (Doc. 37-1 at 32; Doc. 38-1 at 23). Plaintiff's plan for clearing the easement was to include the removal of three trees and a shed from the Eckhoff/Watkins property, (Doc. 37 at 2), and the removal of three trees and a portion of a house from the Lindley property. (Doc. 38 at 2).

---

[3] Because a right of way is an easement under Illinois law, the Court will primarily use the synonymous term "easement" throughout this Order.

The three trees on the Eckhoff/Watkins property are located one foot, eighteen feet, and twenty-one feet from the approximate pipeline location. (Doc. 37-1 at 35, 37). The shed sits approximately ten or eleven feet from the pipeline, though the exact distance is disputed. (Doc. 37-1 at 35; Doc. 46-1 at 1). Defendants Eckhoff and Watkins do not object to the removal of the tree located one foot away from the pipeline, but contest the removal of the other two trees and the shed. (Doc. 46 at 2). On the Lindley property, two trees sit nine feet from the pipeline, and a third is eighteen feet from the pipeline. (Doc. 38-1 at 30). Additionally, at its closest point, the Lindleys' house is twenty-one feet from the pipeline.[4] (Doc. 38-1 at 30).

In maintaining its easements, Plaintiff locates the center of the pipeline, inspects it for leaks or other forms of damage, and removes any encroachments from the easement. (Doc. 37 at 5; Doc. 38 at 5). Gas leaks are primarily detected through aerial inspection over the pipeline. (Doc. 37 at 6; Doc. 37-1 at 4; Doc. 38 at 6; Doc. 38-1 at 4). Aside from these general assertions, Plaintiff has not provided evidence of any maintenance it has previously done on the particular easements involved in this case.

The exact location and width of the easements over Defendants' properties is not defined. Plaintiff argues that it requires an easement sixty feet in width across the Eckhoff/Watkins property, and an easement of fifty feet in width across the Lindley property. (Doc. 37 at 6; Doc. 38 at 6).

---

[4] Defendants argue that Plaintiff has failed to provide evidence showing where the pipeline is located, how far from the pipeline each obstruction lies, or where the easement itself lies. However, they proceed with their other arguments under the assumption that the pipeline and obstructions are located as depicted in the exhibits attached to Troy Yackle's affidavits. (Doc. 44 at 5; Doc. 46 at 8; *see also* Doc. 37-1 at 35-39; Doc. 38-1 at 28-30).

LEGAL STANDARDS

**I. Summary Judgment Standard**

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).

To survive summary judgment, the non-movant must "present enough information to alert the [court] that there exist[s] a genuine issue of material fact and to present the legal theories upon which it [relies]." *United States v. Rode Corp.*, 996 F.2d 174, 178 (7th Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McLendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the Court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986). In deciding a motion for summary judgment, the court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoescht Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

## II. Permanent Injunction Standard

Before a court grants a permanent injunction, a plaintiff must demonstrate: 1) that it has suffered an irreparable injury; 2) that the legal remedies available, such as monetary damages, are inadequate compensation for that injury; 3) that, considering the balance of hardships between the parties, an injunction is warranted; and 4) that the public interest would not be disserved by an injunction. *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007). Additionally, a plaintiff must show "success, as opposed to a likelihood of success, on the merits" where a permanent injunction is requested at summary judgment. *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003).

## III. Easement Rights Under Illinois Law

To clear up any confusion, the Court here addresses Plaintiff's misleading analysis of the applicability of federal law to this state property law claim. In its Motions, Plaintiff argues that federal law preempts state safety regulations for pipelines owned and operated by interstate pipeline companies, which is unremarkable. (Doc. 37 at 9; Doc. 38 at 9). However, Plaintiff also cites a Michigan state court case as support for the contention that "[f]ederal law, not Defendants, defines and controls Panhandle's obligation to inspect and maintain its pipelines," by which Plaintiff seems to imply that federal regulations give it the right to act in whatever manner it deems necessary in order to comply with such regulations. (Doc. 37 at 9; Doc. 38 at 9 (citing *Panhandle E. Pipe Line Co., v. Musselman*, 668 N.W.2d 418, 421 (Mich. Ct. App. 2003)). The cited case actually states that federal law addresses what a pipeline owner is required to do with regards to pipeline

maintenance, but does not give that easement owner any additional rights over the property. *Musselman*, 668 N.W.2d at 421. Plaintiff has pointed to no federal law that preempts state property law as applicable here, and Illinois state property law is therefore properly applied in this case.

Under Illinois law, an easement is "a right or privilege in real estate of another." *McCann v. R.W. Dunteman Co.*, 609 N.E.2d 1076, 1081 (Ill. App. Ct. 1993). A right of way is an easement. *Kurz v. Blume*, 95 N.E.2d 338, 339 (Ill. 1980). The owner of an easement is entitled to "necessary use," which is defined as "such use as is reasonably necessary for full enjoyment of the premises." *McCann*, 609 N.E.2d at 1081. However, the owner of an easement cannot "make material alterations in the character of the easement, even though it would be more to his convenience to do so, if the alteration places a greater burden upon" the property owner. *Flower v. Valentine*, 482 N.E.2d 682, 687 (Ill. App. Ct. 1985). The owner of the property subject to the easement, referred to as the servient estate, must not interfere with the easement owner's enjoyment of its easement, but may otherwise use the property for any purpose he sees fit. *Kurz*, 95 N.E.2d at 341.

The language of the instrument creating the easement should be construed "in accordance with the intention of the parties." *Koplin v. Hinsdale Hosp.*, 564 N.E.2d 1347, 1354 (Ill. App. Ct. 1990). When the width and location of the easement is not defined, the "width is such as is reasonably convenient and necessary for the purposes for which the way was created." *Vallas v. Johnson*, 390 N.E.2d 939, 941 (Ill. App. Ct. 1979) (internal quotation marks omitted). Evidence "concerning the scope of [the easement holder's] recorded easements," is not enough to establish the

7

actual width and location of the easements. *Peters v. Milk Grove Special Drainage Dist. No. 1 of Iroquois Cnty.*, 610 N.E.2d 1385, 1388 (Ill. App. Ct. 1993). Where an easement's width and location is undefined, the intent of the parties in creating the easement is evidenced "by the extent of actual use." *Vallas*, 390 N.E.2d at 942.

## DISCUSSION

In the present Motions, Plaintiff alleges it is "entitled to unobstructed access and entry onto Defendants' Property" in order to clear obstructions and maintain its easements.[5] (Doc. 37 at 10; Doc. 38 at 10). Plaintiff argues that it meets the standard for judgment as a matter of law, and is thus entitled to an injunction, because: 1) Defendants' interference with Plaintiff's exercise of its rights over the easements will cause irreparable harm; 2) no legal remedy exists that can adequately redress that harm; 3) Plaintiff's need to use its easements to inspect and maintain the Galesburg Lateral pipeline outweighs Defendants' interests with respect to the use of their land; and 4) the public as a whole will be safer and will benefit from Plaintiff having proper access to their easements. (Doc. 37 at 10; Doc. 38 at 10). Plaintiff thereby seeks an injunction allowing it to remove three trees and a shed from the Eckhoff/Watkins property, and three trees and a portion of the house from the Lindley property.

Based upon the record before it, the Court cannot determine that there are no genuine disputes of material fact; thus, summary judgment is inappropriate. Material issues of fact exist regarding the location and necessary width of the

---

[5] Because the legal issues and facts alleged in each Motion overlap, the Court considers them together, and will indicate any differences between the Motions.

easements, and the scope of the easement must still be resolved. Additionally, the issue of compensation owed to Defendants must also be addressed.[6]

**I. Location and Necessary Width of Easements**

When the dimensions of an easement are not defined, the width "is such as is reasonably convenient and necessary" for the original purpose of the easement. *Vallas*, 390 N.E.2d at 941. In the present case, the easements have no defined width, so their width must be determined by other means, such as evidence of Plaintiff's prior actual use. *See Peters*, 610 N.E.2d at 1389. Because there are disputes relating to the necessary size of the easements, and because Plaintiff has not shown that its prior use of the easement entitles them to either fifty- or sixty-foot-wide easements, Plaintiff's Motions for Summary Judgment are denied.

Defendants point out that Plaintiff has provided insufficient evidence as to where exactly the pipeline is located on either property or exactly how far the trees and structures are from the pipeline. (Doc. 46 at 8; Doc. 44 at 5). Even if the easement entailed an absolute right to clear any trees or structures upon it, and if its width were defined by the Court as Plaintiff requests, it is not clear where exactly the easement allows Plaintiff to clear obstructions, since the easement's location would be determined based on a distance from the pipeline's center. Plaintiff submits photographs of the properties with lines overlaid, but provides no

---

[6] At the outset, the Court notes that from the undisputed facts, it appears Plaintiff will ultimately be entitled to an injunction of some sort to protect its property rights pursuant to the easements, which currently Plaintiff cannot enjoy. However, as explained in this Order, at this stage in the litigation, Plaintiff has not adequately proven its claim and has not specified the terms of the injunction it seeks. The Court simply cannot issue what would essentially be a blank check, especially in light of the disputed facts and the sparse and contradictory record.

evidence of where the information to make these exhibits came from, where the pipeline specifically lies, or who measured the distances between the pipelines and the obstructions and when. The unknown fact of the pipeline's precise location is therefore a material fact that precludes the entry of summary judgment.

Regarding the Lindley property, Plaintiff contends that a fifty-foot-wide easement is necessary "considering the size of the equipment required to repair and replace the pipeline." (Doc. 38-1 at 4). Over the Eckhoff/Watkins property, however, Plaintiff argues that a sixty-foot-wide easement is necessary. (Doc. 37-1 at 4). These easements are said to be measured either twenty-five or thirty feet on each side from the center line of the respective pipelines. (Doc. 37-1 at 5; Doc. 38-1 at 5). Plaintiff fails to point to any significant difference between the two properties to explain why the width necessary to inspect and maintain the same pipeline should vary by ten feet between two easements that contain identical language in their granting documents.

Plaintiff likely derives the sixty-foot number for the Eckhoff/Watkins property from a 1968 federal district court case analyzing the same easement in dispute currently. *Panhandle E. Pipe Line Co., v. Verbeke,* No. P-2889, slip op. (S.D. Ill.[7] Apr. 2, 1968) (filed in this case as Doc. 37-1 at 11-18)). Though this prior order may have a significant, or even dispositive, impact on Plaintiff's claim against Defendants Eckhoff and Watkins, Plaintiff only mentions it in one sentence in its brief, without arguing its importance or application to the present dispute. In *Verbeke*, Panhandle sought to enjoin the Verbekes, previous owners of the

---

[7] Though a property dispute over land in Peoria County, the case was in the Southern District of Illinois because the Central District did not yet exist.

10

Eckhoff/Watkins property, to prevent them from executing their plans to build a house within ten feet of the pipeline. *Id.* at 4-5. In its findings of fact, the court stated "a surface width of 60 feet, or 30 feet on either side of the pipeline, is reasonably necessary to permit plaintiff to exercise the rights granted" in the easement. *Id.* at 5. The court ultimately held that the property owner was prohibited from placing "any structure or structures within a distance of thirty (30) feet from the center of plaintiff's pipeline." *Id.* at 8. As Defendants note, the injunction did not mention trees or other obstructions, but only enjoined the owners from erecting structures. Though this order, whose validity Defendants do not dispute, likely has substantial impact on this case, the Court is not prepared to delineate its effect given the very minimal briefing on this issue. It remains one more issue to be resolved at a later stage in this case.

Setting aside the unknown effect of the *Verbeke* order, Plaintiff has failed to establish its need for the easements to be defined at either fifty or sixty feet. Attempting to show that a wide easement is necessary, Plaintiff argues that replacing or repairing pipes is a major undertaking that requires large machinery, and thus a large easement. (Doc. 37-1 at 4-5; Doc. 38-1 at 4-5). However, Plaintiff provides no specific information regarding the size of equipment needed or the amount of space required for work on the pipeline, saying only that such work requires "[l]arge pieces of mechanical equipment" and "[c]onsiderable space." (Doc. 37-1 at 5; Doc. 38-1 at 5).

The Lindleys argue that even if the pipeline needed to be repaired or replaced, Plaintiff would only need twenty-one feet from the center of the pipeline.

11

The Lindleys provide an affidavit from civil engineer Phillip W. Cochran as support for this argument. Mr. Cochran states that because there is a public road and sidewalk on one side of the pipeline's general location, Plaintiff would only need twenty-one feet of space on the other side in order to get its equipment onto the property to make any necessary repairs or perform other maintenance work. (Doc. 44-1 at 3). Mr. Cochran notes further that the house on the Lindley property "would not be a hindrance to the performance" of work on the pipeline. (Doc. 44-1 at 3). Similarly, Defendants Eckhoff and Watkins argue that sixty feet is not necessary for Plaintiff for the purpose of the easement. (Doc. 46 at 8). The Court agrees that Plaintiff has not yet established that it is necessary for the Court to define its easements at fifty or sixty feet, which is a further reason to deny summary judgment.[8]

Finally, Plaintiff has pointed to no evidence indicating the extent of its prior actual use. Plaintiff concedes that the trees on Defendants Eckhoff and Watkins' property have existed there for about twenty years, and that a shed has existed there since 2010. (Doc. 48 at 1). Further, the photographs attached to Troy Yackle's affidavit seem to show that the trees Plaintiff seeks to remove from the Lindley property are also mature. (Doc. 37-1 at 33, 35; Doc. 38-1 at 28). The extent of Plaintiff's prior use has not been made clear, and so it cannot be used to determine

---

[8] Plaintiff also argues that "[s]ometimes, additional temporary right-of-way is needed solely to organize the job site." (Doc. 37-1 at 5). Plaintiff offers no suggestion of how large this additional easement may be, and at any rate, an easement holder cannot alter an established easement without the consent of the property owner. *Flower*, 482 N.E.2d at 687. As summary judgment is inappropriate at this time, the Court will not now address whether additional portions of Defendants' property might temporarily come within the terms of the original easements.

12

whether Plaintiff's proposed actions would be within the terms of the easement. Summary judgment thus cannot be based on Plaintiff's prior use of the easement.

There is a significant difference between an easement of either fifty or sixty feet, and an easement of less than twenty-one feet. A reasonable fact-finder could conclude Plaintiff's easement rights are not as broad as it claims. Further, Plaintiff has provided no evidence of the pipeline's exact location, or the specific amount of space needed to complete work on a pipeline. Plaintiff also has not shown how the easement widths it seeks correspond to prior actual use. Accordingly, genuine issues of material fact exist as to the easement's location and width, and Plaintiff's Motions are denied.

## II. Injury and Available Remedies

Plaintiff next alleges that no remedy exists to redress its injury and that an injunction must be granted. (Doc. 37 at 10; Doc. 38 at 10). Plaintiff argues that Defendants have interfered with its property rights by not allowing Plaintiff to enter Defendants' properties and clear the easements. (Doc. 37 at 10; Doc. 38 at 10.) Because federal law obligates Plaintiff to inspect its pipelines, and because Plaintiff primarily inspects its pipelines aerially, Plaintiff claims that it will be subject to liability for failure to comply with federal regulations if not allowed to clear their easements. (Doc. 37 at 9-11; Doc. 38 at 9-11). Plaintiff states that it primarily inspects pipelines aerially, and that trees, brush, and other structures on the easement can be problematic to that inspection, and to any work required on the ground, in addition to potentially damaging the pipeline itself. (Doc. 37 at 6; Doc. 37-1 at 4; Doc. 38 at 6; Doc. 38-1 at 4). Further, Plaintiff argues that if an injunction

is not granted, it could potentially be forced to spend significant amounts of money repairing or relocating the pipelines. (Doc. 37 at 11; Doc. 38 at 11). Thus, Plaintiff argues an injunction is the only adequate remedy. (Doc. 37 at 9-11; Doc. 38 at 9-11).

Aerial inspection is the industry standard for pipeline patrolling, though it is not the only available means. *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 627-30 (6th Cir. 2008); 49 C.F.R. § 192.705(c). Section 192.705(c) of the relevant Department of Transportation regulations provides that "walking, driving, flying, or other appropriate means of traversing" the easement are acceptable methods of pipeline inspection. 49 C.F.R. § 192.705(c). Defendants argue that because Plaintiff has other means available by which to inspect its pipeline and comply with federal regulations, any injury Plaintiff suffers by not being able to inspect the pipeline aerially can be cured by Plaintiff walking or driving onto Defendants' property to inspect it, and that the trees and structures on Defendants' property thus do not hinder inspection efforts. (Doc. 44 at 6; Doc. 46 at 8).

Plaintiff clearly suffers some irreparable harm that likely justifies injunctive relief. Property rights are a prime example of rights without adequate remedy at law. *See, e.g.*, *United Church of the Med. Center v. Med. Center Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982). Plaintiff is entitled to necessary use of its easement, which may include the aerial inspection of the pipeline if Plaintiff can show it is reasonably necessary for full enjoyment of the easement. Currently, Plaintiff is being prevented from such use. Monetary damages would not adequately address Plaintiff's injury from being unable to enjoy its property rights and maintain its pipeline because the costs could be immeasurable, including the possibility of

14

having to move the pipeline. However, Plaintiff has not shown that it has suffered an irreparable injury to an extent that supports an injunction of the scope requested. Thus, while Plaintiff may well be entitled to an injunction to enforce its property rights, because the extent of those rights and the injury to Plaintiff have not been proven, summary judgment is not appropriate at this time.

### III. Balance of Hardships

Plaintiff argues that its need to inspect and maintain the pipeline outweighs any hardship Defendants may suffer if their trees and structures are removed. The Lindleys argue that they suffer a greater hardship than Plaintiff. (Doc. 44 at 7). Again, though the balance will likely weigh in Plaintiff's favor in the context of a specific, tailored injunction, Plaintiff has not shown that the balance of hardships supports an injunction requiring Defendants to permit the immediate and unconditional removal of trees and structures from their properties.

By not allowing Plaintiff to clear obstructions from its easement, Plaintiff alleges, Defendants are subjecting Plaintiff to liability for noncompliance with federal law, as well as putting themselves and the general public in danger. (Doc. 37 at 15; Doc. 38 at 15). Plaintiff also points to the potential for tree root systems to compromise the pipeline itself and the fact that obstructions on the easement could prevent Plaintiff from entering its easement to make repairs in case of an emergency. (Doc. 37-1 at 4; 38-1 at 4). Further, Plaintiff argues that aerial inspection is the only practical method of inspection, which cannot be done when tree canopies obstruct the aerial view of the pipeline, and that other means of inspection, such as walking or driving, would cause Plaintiff hardship because of

15

the numerous pipelines it is required to inspect. (Doc. 47 at 3; Doc. 48 at 3). Plaintiff argues the "public interest is an important consideration in balancing the relative harm of the parties." (Doc. 37 at 15; Doc. 38 at 15). In particular, Plaintiff points to the public safety issues if a gas leak were to occur, which may be more likely if tree roots damage the pipeline. (Doc. 37 at 15; Doc. 38 at 15).

Defendants have contested Plaintiff's assertions of the proper balancing of hardships, particularly with an injunction as broad as Plaintiff apparently requests. Perhaps the most notable example of a dispute over the proper balance of hardships, the Lindleys point out that "there is an issue as to whether [their house's] removal would be greatly disproportionate to any minimal enhancement of the easement's purpose," (Doc. 44 at 2), considering the aerial view over the Lindley property would be limited by only four feet if the house were to remain intact. (Doc. 44 at 6). Courts can refuse to order removal of portions of a house when such removal would be "disproportionate to any minimal enhancement of the easement's purpose." *Bjork v. Draper*, 936 N.E.2d 763, 772 (Ill. App. Ct. 2010); *see also Schnuck Mkts, Inc. v. Soffer,* 572 N.E.2d 1169, 1182 (Ill. App. Ct. 1991) (finding no error where a trial court refused to grant plaintiff the requested injunctive relief when such an injunction would place great hardship on the defendants and give no benefit to the plaintiffs). The Lindleys argue that it would be expensive to remodel their home to accommodate Plaintiff's request. (Doc. 44 at 7). Further, they contend that such a remodel would diminish their property value due to "loss of interior square footage and the [resulting] unusual exterior aesthetics." (Doc. 44 at 7).

16

The Court finds there are genuine disputes that preclude resolution of this issue, especially given the uncertainty over the scope and terms of the potential injunction. In particular, Plaintiff's argument as to the Lindleys' house is confusing. In its Motion for Summary Judgment, Plaintiff clearly seeks an injunction allowing it to remove a corner of the Lindleys' home, as it allegedly encroaches upon Plaintiff's easement. (Doc. 38 at 10). However, in its Reply to the Lindleys' Response, Plaintiff asserts, in all caps:

> Panhandle has no intention to remove the corner of the Lindleys' house in this maintenance effort and has so stated to both of the Lindleys and their counsel on numerous occasions, unless an emergency occurs such as a leak in a line under the house or so close to its corner that there is no alternative.

(Doc. 47 at 4) (emphasis omitted). Perhaps Plaintiff forgot its original request – Plaintiff states in its Motion that it must now remove all obstructions from its right-of-way in part because "[a]n emergency requires immediate and unobstructed access to the pipeline." (Doc. 38 at 6). Plaintiff's statement about emergency situations in its Reply is inconsistent with what Plaintiff alleges in its Motion, and thus an issue of fact remains unresolved as to even what structures Plaintiff seeks to remove from the Lindley property and when.

Plaintiff has not clearly demonstrated that the burden it faces outweighs the burden facing Defendants such that it should be entitled to remove all obstructions immediately simply to allow it to inspect the pipeline. Much of this problem relates to the failure to specify the terms of an injunction. Thus, the balance of hardships must be determined in conjunction with the scope of the injunction, and cannot currently be resolved.

17

**IV. Compensation Owed to Defendants**

Defendants raise the issue of damages in their respective responses, claiming there is a genuine issue of material fact as to what monetary compensation will be awarded Defendants if Plaintiff removes the obstructions from Defendants' properties. (Doc. 44 at 7; Doc. 46 at 9). The easements state the servient estate owners must be paid for "all damages to crops, fences or other property of the grantors on said premises caused by the laying, *maintaining*, replacing or removing said pipe line." (Doc. 37-1 at 8; Doc. 38-1 at 8) (emphasis added).

Defendants argue that they must be compensated because Plaintiff would be removing trees and structures in order to maintain its pipeline. (Doc. 44 at 7; Doc. 46 at 9). Plaintiff counters that no damages are owed since it is merely clearing their right of way, rather than doing maintenance or repair work on the pipe itself. (Doc. 48 at 4). Plaintiff states it has already paid once in order to install the pipeline, and that since it has no plans to excavate, replace or remove the pipeline, it is not required to pay damages. (Doc. 48 at 4). However, the rest of Plaintiff's argument rests on it needing to remove trees, a shed, and a portion of a house in order to *maintain* their pipeline, which seems to indicate that Plaintiff may owe Defendants compensation if Plaintiff causes damage to crops, fences, or other property. Because it has not been settled what amount of compensation, if any, would be owed to Defendants under the terms of the easement, it is an additional issue that must be resolved at a later stage.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motions for Summary Judgment as to Defendants Mark Eckhoff and Sally Watkins (Doc. 37), and Defendants Paul R. and Sherri L. Lindley (Doc. 38) are DENIED. Plaintiff is ORDERED to submit a status report on the status of its claims against Defendants James H. Pfahl, Rebecca D. Pfahl, and Michael Thuline within seven days of the date of this Order. This matter is REFERRED BACK to Magistrate Judge Cudmore for further pretrial proceedings. IT IS SO ORDERED.


Entered this <u>26th</u> day of July, 2013.


                                            s/ Joe B. McDade
                                            JOE BILLY McDADE
                                    United States Senior District Judge